193 N.J. Super. 595 (1984)
475 A.2d 622
MICHAEL GOMEZ, PLAINTIFF-APPELLANT,
v.
RUPERT MURDOCH, RAY KERRISON AND NEWS GROUP PUBLICATIONS, INC., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued January 10, 1984.
Decided February 6, 1984.
*597 Before Judges ANTELL, JOELSON and McELROY.
Steven L. Kessel argued the cause for appellant (Drazin and Warshaw, attorneys).
Slade R. Metcalf, member of New York bar and of the firm of Squadron, Ellenoff, Plesent & Lehrer, argued the cause pro hac vice for respondents; Winne, Banta & Rizzi, of counsel; Donald A. Klein on the brief.
The opinion of the court was delivered by JOELSON, J.A.D.
*598 This appeal involves a libel action. Plaintiff, a professional jockey, filed a complaint based upon an article by defendant Kerrison in a daily newspaper, the New York Post. The complaint alleges that "defendant Murdoch is the publisher of ... the New York Post, which is published by defendant, News Group Publications, Inc. [sic]...." Defendants made a motion for summary judgment which was granted. This is plaintiff's appeal from the order granting summary judgment. We affirm.
Defendants' application for summary judgment was based upon the contention that plaintiff was a public figure and, therefore, was required to prove "actual malice" within the meaning of New York Times v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). In that case, the Court defined a statement made with actual malice as one made "... with knowledge that it was false or with reckless disregard of whether it was false or not." Id. at 279-280, 84 S.Ct. at 725-726. Although New York Times v. Sullivan dealt with a public official, the same test of actual malice was ultimately applied to a public figure. Gertz v. Welch, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974); Lawrence v. Bauer Pub. & Print., Ltd., 89 N.J. 451, 466 (1982).
There are two questions for us to resolve on this appeal. First, was plaintiff a public figure at the time of the publication of the article about which he complains? Second, if plaintiff was a public figure, was there a disputed question of fact as to actual malice so as to preclude summary judgment? We answer the first question "yes," and the second question "no."
In determining plaintiff's status as a public figure, the trial judge stated that plaintiff had been "a flat track jockey" since 1975 or 1976 and on September 25, 1981, had a mount at the Meadowlands racetrack. It was defendant Kerrison's derogatory article in the New York Post about plaintiff's handling of his horse in a race on that date which formed the basis of plaintiff's *599 libel action. It is not necessary for us here to repeat that article in full. Suffice it to say that the article charged in forceful and caustic terms that plaintiff deliberately tried to keep his horse from making its best effort. The article ended with a declaration that plaintiff "robbed" those persons who bet on the horse "as if he had plucked the money out of their wallets."
In his colloquy with plaintiff's counsel at the time of argument on the motion for summary judgment, the trial judge said that "there is no way in the world that a man could decide to become a jockey, put the silks on and ride before hundreds of thousands of people as he [plaintiff] has and not call himself a public figure." The judge also stated that "[m]any people on television see him run," and further mentioned "[t]he public interest in horseracing." Finally, the judge declared that plaintiff "voluntarily made himself publicly seen, publicly known, publicly printed." It is undisputed that it is the function of the trial judge, rather than the jury, to decide the question of whether a plaintiff in a libel action is a public figure. See Lawrence v. Bauer Pub. & Print., Ltd., supra, 89 N.J. at 462. We agree with the trial judge's view that plaintiff here was a public figure.
The trial court relied in large part on Gertz v. Welch, supra. That case distinguished between an individual of "pervasive fame or notoriety" who is a public figure in all contexts and an individual who "becomes a public figure for a limited range of issues." 418 U.S. at 351, 94 S.Ct. at 2997. In the matter now before us, the trial court stated that plaintiff was not a public figure "as far as private life is concerned," but "when he gets on the back of a horse, and he becomes a jockey, he certainly takes on all aspects of being a public figure." Thus, although the judge did not specifically so articulate it, he obviously found plaintiff to be a public figure for a limited range of issues within the Gertz dichotomy. Accordingly, adverse newspaper comment about plaintiff's performance in *600 his professional capacity as a jockey must be considered under the law of defamation relating to public figures. We are not here dealing with comments about plaintiff's activities outside of his professional life, which comments would not be privileged except in the case of a person of pervasive fame or notoriety.
In Time, Inc. v. Johnston, 448 F.2d 378 (4 Cir.1971), the court held that a retired professional basketball player was a public figure. There, the court quoted Cepeda v. Cowles Magazine & Broadcasting Co., 392 F.2d 417 (9 Cir.1968), cert. den. 393 U.S. 840, 89 S.Ct. 117, 21 L.Ed.2d 110 (1968), a case involving a professional baseball player, in which the court stated that public figures are those persons involved in issues in which the public has a justified and important interest, and include athletes. Consistent with this definition, a college athletic director, Curtis Publishing Co. v. Butts, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094) (1967), a basketball coach, Grayson v. Curtis Publishing Co., 72 Wash.2d 999, 436 P.2d 756 (1968), and a professional boxer, Cohen v. Marx, 94 Cal. App.2d 704, 211 P.2d 320 (1950), have all been held to be public figures. We likewise find to be a public figure a professional jockey who chooses to perform publicly in a sport which commands widespread public interest, and regarding which the communications media regularly report. "Professional athletes, at least as to their playing careers, generally assume a position of public prominence." Chuy v. Philadelphia Eagles Football Club, 595 F.2d 1265, 1280 (3 Cir.1979). We note the emphasis in plaintiff's reply brief on the question of plaintiff's access to the media to respond to allegations against him. While it is true that this is a factor to be considered, see Gertz v. Welch, supra, an affidavit submitted by defendant Kerrison in support of the motion for summary judgment reveals that there was a "press box" at Meadowlands racetrack. There is no indication that plaintiff could not visit that facility in order to give his side of the story.
*601 We move now to the subject of whether the trial judge should have abstained from granting summary judgment because a jury question remained as to whether defendants acted with actual malice. After determining that plaintiff was a public figure, the judge said: "Having made that conclusion, all the other dominoes can click, click, click and fall in place." This statement failed to fulfill the requirement of R. 4:46-2 that on a motion for summary judgment, the trial court "shall find the facts and state its conclusions." Ordinarily, this lack of compliance with the rule by the trial judge would make a remand necessary. However, we are satisfied that under the circumstances of this case a remand would serve no useful purpose and could not change the result. Our conclusion in this respect is based on three factors: (1) affidavits submitted by defendants in support of their motion for summary judgment; (2) the absence of any opposing affidavit or certification on the part of plaintiff and (3) plaintiff's answers to interrogatories.
Defendants submitted affidavits from defendant Kerrison and a racetrack steward, Sam Boulmetis. In his affidavit, defendant Kerrison, who is the author of the newspaper article in question, stated that while in the press box at Meadowlands racetrack, he noticed a press release which announced that plaintiff had been suspended for "failing to persevere with his mount" in the fourth race on September 25, 1981. Kerrison declared that upon consulting the "chart," he found that it stated that the horse ridden by plaintiff "made a good late run, while remaining under restraining through the drive." Several days later, according to the Kerrison affidavit, Kerrison spoke with three state stewards and viewed a videotape of the suspect race approximately six times. Kerrison further stated that one of the stewards, Sam Boulmetis, called to his attention that the videotape revealed that plaintiff was not "pushing" his horse toward the end of the race, while all the other jockeys were pushing theirs. The Kerrison affidavit also quoted Boulmetis as saying that plaintiff's explanation that his saddle had slipped *602 was "ridiculous" as plaintiff "had his feet on the dashboard." The affidavit of Boulmetis confirmed Kerrison's affidavit.
Despite the damning nature of Kerrison's affidavit, plaintiff offered no countervailing affidavit to indicate that the critical article was written with actual malice, i.e., that it was made with knowledge that it was false or with reckless disregard of whether or not it was false. See R. 4:46-5(a). Moreover, with regard to plaintiff's answers to interrogatories, when plaintiff was asked the basis of his claim of actual malice he responded: "See prior answers; article has no basis in fact." All the questions and answers have not been supplied to us, but plaintiff has made no claim to us that they tend to prove actual malice. Certainly, an assertion that an offending article has "no basis in fact" is insufficient to establish actual malice.
In deciding this matter, we have not disregarded Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67 (1954), in which the Court held that the presence of a disputed question of fact precludes summary judgment and that all inferences are to be drawn against the moving party. However, in a libel action where a qualified privilege exists, the plaintiff has the burden of proving actual malice. Walker v. Calahan, 97 Mich. App. 346, 296 N.W.2d 18 (1980); Spencer v. Community Hospital, 87 Ill. App.3d 214, 42 Ill.Dec. 272, 408 N.E.2d 981 (1980); Colson v. Steig, 86 Ill. App.3d 993, 42 Ill.Dec. 53, 408 N.E.2d 431 (1980), aff'd 89 Ill.2d 205, 60 Ill.Dec. 449, 433 N.E.2d 246. Plaintiff here has failed to raise any question of fact as to actual malice. At the least, the evidence must permit the conclusion that defendants entertained serious doubt as to the truth of the publication. St. Amant v. Thompson, 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262 (1968); Marchiano v. Sandman, 178 N.J. Super. 171, 176 (App. Div. 1981), certif. den. 87 N.J. 392 (1981). In Marchiano, where the alleged defamatory statement was that plaintiff had given false testimony before a grand jury, we held that the test for actual malice had not been satisfied even though defendant had *603 failed to read the grand jury testimony. In conclusion, we note the statement in Kotlikoff v. The Community News, 89 N.J. 62 (1982) that in libel cases trial courts are encouraged "to give particularly careful consideration to identifying appropriate causes for summary judgment disposition." Id. at 67-68.
Affirmed.