178 N.J. Super. 171 (1981)
428 A.2d 541
ROBERT MARCHIANO AND MARGARET MARCHIANO, HIS WIFE, PLAINTIFFS-RESPONDENTS,
v.
CHARLES W. SANDMAN, INDIVIDUALLY AND AS ATTORNEY FOR RALPH D. KOEHLER, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 9, 1981.
Decided March 25, 1981.
*173 Before Judges SEIDMAN, ANTELL and LANE.
Joseph M. Assan argued the cause for appellant (Schmidt & Assan, attorneys; Harry Green, of counsel and on the brief).
Robert P. Subranni, argued the cause for respondents (Subranni & Doughty, attorneys).
The opinion of the court was delivered by ANTELL, J.A.D.
Defendant appeals from a judgment in defamation based upon a jury verdict awarding plaintiff $25,000 compensatory and $50,000 punitive damages. Defendant is an attorney and plaintiff, an officer of the Cape May Police Department. On June 8, 1975 plaintiff forcibly arrested Ralph Koehler, who was thereafter indicted under N.J.S.A. 2A:99-1 for assaulting an officer. Defendant represented Koehler and in connection therewith made unprivileged public statements that plaintiff had unmercifully and maliciously beaten Koehler, that he had filed a false complaint against Koehler and that he had lied before the grand jury which indicted Koehler. These statements form the basis of plaintiff's claim for which recovery was allowed.
Notwithstanding numerous claims of error and irregularities in the proceedings below, we confine our attention to two issues which we notice as plain error.
*174 As a police officer plaintiff is a public official within the meaning of New York Times v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). This is conceded. Also, see La Rocca v. New York News, Inc., 156 N.J. Super. 59, 62 (App.Div. 1978). As such, he is barred from
... recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with "actual malice"  that is, with knowledge that it was false or with reckless disregard of whether it was false or not. [New York Times v. Sullivan, supra, 376 U.S. at 279-80, 84 S.Ct. at 725-26.]
The trial judge correctly charged the foregoing standard in his instructions to the jury. Error, however, was committed in his discussion concerning proof of actual malice. On this topic he first explained that such proof may be either "intrinsic" or "extrinsic." Extrinsic proof, he went on to say, could consist of
... threats or personal ill will or such circumstances existing between the parties as to indicate that the words were published with a primary motivation of harm.
In Beckley Newspapers Corp. v. Hanks, 389 U.S. 81, 88 S.Ct. 197, 19 L.Ed.2d 248 (1967), the trial judge charged the jury that it could find for plaintiff, a public official, if it determined that defendant had published certain defamatory editorials "with bad or corrupt motive" or "from personal spite, ill will or a desire to injure plaintiff." Although the Supreme Court did not base its decision thereon, it clearly indicated that the instructions were "clearly impermissible" as an "erroneous interpretation of New York Times." Id. at 82, 88 S.Ct. at 198.
The issue was confronted more directly in Greenbelt Coop. Asso. v. Bressler, 398 U.S. 6, 90 S.Ct. 1537, 26 L.Ed.2d 6 (1970). There the challenged instructions defined malice as "spite, hostility, or deliberate intention to harm." Such were held "constitutionally insufficient where discussion of public affairs is concerned." Id. at 10, 90 S.Ct. at 1539, quoting Rosenblatt v. Baer, 383 U.S. 75, 84, 86 S.Ct. 669, 675, 15 L.Ed.2d 597 (1966).
We perceive no material distinction between the instructions considered by the foregoing opinions and those herein. Whereas *175 the instructions of Beckley and Greenbelt equate actual malice with ill will and an intent to harm, those before us authorize the inference of actual malice from proof of such ill will. The effects of both are identical. In either case the jury is free to substitute the test of ill will for the constitutional standard of actual knowledge or reckless disregard for the truth.
In his opinion denying defendant's post-trial motion for relief from the judgment the trial judge stated that his references to ill will and intent to harm were made only with regard to the issue of punitive damages. It is true that the references do appear in relation to punitive damages. But they also appear earlier in the charge where they were so related to the proof of actual malice as to leave no doubt that they invited the jury to decide this vital issue on the erroneous principle of law. This error possessed "a clear capacity to bring about an unjust result." See State v. Hock, 54 N.J. 526, 538 (1969).
Ordinarily prejudicial error in the jury charge would result in a reversal and remand for a new trial. However, a further ground of defendant's appeal is that the record is destitute of any evidence wherefrom it might be legitimately inferred either that he knew his statements were false or acted in reckless disregard of whether they were or not. Clearly, it was plaintiff's burden to prove actual malice. Plaintiff responds that the required proof is to be found in three aspects of the evidence: (1) defendant's failure to order and read plaintiff's testimony before the grand jury; (2) defendant's filing of a civil suit for malicious prosecution against plaintiff some three months before making the defamatory statements and (3) defendant's confrontation with plaintiff concerning the latter's refusal to reveal the name of an informant to defendant some months earlier in connection with an unrelated matter (an incident of which defendant denied any recollection).
From our examination of the record and our questioning of counsel during oral argument it appears that plaintiff's grand jury testimony was not placed in evidence. Plaintiff did not *176 recall what his testimony was before the grand jury and testified in conclusory form only that he did not lie before that body. We cannot discern, therefore, what would have been imparted to defendant by a reading of the transcript.
Nor does defendant's failure to read the grand jury transcript constitute reckless disregard. Before making the statements, his client had given him his version of the arrest incident. He became familiar with plaintiff's account from having read his police report, a transcript of the arraignment proceedings and a copy of the charges filed by plaintiff. The indictment returned by the grand jury against Koehler materially conformed with the charges brought by plaintiff. Defendant therefore had a reasonable basis from which to infer what plaintiff's grand jury testimony had been. Under these circumstances the transcript was not of such manifest significance that defendant's failure to read it evidences recklessness under New York Times v. Sullivan. Furthermore, failure to investigate does not in itself establish bad faith or recklessness. 376 U.S. at 287-88, 84 S.Ct. at 729-30. At the least, the evidence must "permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." St. Amant v. Thompson, 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262 (1968).
Neither under the standard of "convincing clarity" required by New York Times v. Sullivan, supra, 376 U.S. at 285-86, 84 S.Ct. at 728-29, nor even under a lesser standard, has it been shown how the facts that defendant sued plaintiff for malicious prosecution and had an earlier disagreement with him about the name of an informant demonstrate actual knowledge of falsity or reckless disregard of the truth. At most, they evidence ill will or personal animosity which, as we have explained, do not suffice. We therefore find no basis in the evidence to support the required finding of actual malice.
Judgment reversed. Judgment entered in favor of defendant.