733 A.2d 1197 (1999)
323 N.J. Super. 538
Ronnie STANDRIDGE, Plaintiff-Respondent,
v.
Al RAMEY, an individual, Al Ramey, as agent New Jersey Education Association, and New Jersey Education Association, a New Jersey Association, Defendants-Appellants, and
Kristin Sieka, Jane Siems, Stacey Johnston, Barbara Reu, Janet Vignola, Angela Krass, Barbara Remick and Roxbury Education Association, Defendants.
Kristin Sieka, Jane Siems, Stacey Johnston and Barbara Reu, Plaintiffs,
v.
Ronald Standridge and Roxbury Board of Education, Defendants.
Superior Court of New Jersey, Appellate Division.
Argued April 26, 1999.
Decided July 12, 1999.
*1198 Richard A. Friedman, Newark, for defendants-appellants (Zazzali, Zazzali, Fagella & Nowak, attorneys; James R. Zazzali and Mr. Friedman, on the brief).
Edward J. Bilinkas, Fairfield, for plaintiff-respondent (Lorber, Schneider, Nuzzi, Bilinkas & Mason, attorneys; Mr. Bilinkas, of counsel; Lisa Chadwick Thompson, on the brief).
Before Judges HAVEY, SKILLMAN and PAUL G. LEVY.
The opinion of the court was delivered by SKILLMAN, J.A.D.
This interlocutory appeal involves summary judgment practice in defamation cases.
Plaintiff Ron Standridge is the former athletic director of the Roxbury school district. Defendant New Jersey Education Association (NJEA) is the collective negotiating representative of the teachers employed by the district, and defendant Al Ramey is a "Uniserv Representative" employed by NJEA. Ramey's duties include the representation of local education associations and their members in connection with complaints about working conditions and claims of sexual discrimination and harassment.
*1199 According to Ramey, defendant Kristen Sieka, an athletic trainer at Roxbury High School, called him sometime during the 1994-95 school year to complain that plaintiff was spreading rumors about her sex life and harassing her in the workplace. At that time, Ramey advised Sieka to contact the "local affirmative action officer" and file a grievance with the Roxbury Board of Education (the Board).
According to Ramey, the next time he received any information relating to plaintiff was in February 1997, when Deana Luchs, the Vice President of the Roxbury Education Association, advised him that the female coaches under plaintiff's supervision were being subjected to harassment and discriminatory treatment. As a result of this conversation, on March 25, 1997, Ramey met with Luchs, various other representatives of the Roxbury Education Association, Sieka and three female coaches, defendants Jane Siems, Barbara Reu and Stacey Johnston. According to Ramey, Sieka complained that plaintiff had made prurient comments about her sex life, "physically bothered" her and said that "she could get whatever she wanted by batting her eyes." Sieka also told Ramey that she received a telephone call late one night in which the caller simply breathed into the phone. After the call, she used her telephone's star-sixty-nine feature, which revealed that the call came from the Roxbury Athletic Department. In addition, Sieka gave Ramey a copy of a memo from the principal of Roxbury High School to plaintiff, which stated:
I recently had a conversation with Mr. Tim O'Brien, Director of Personnel, Administration, and Curriculum regarding your professional relationship with Kristen Sieka, Athletic Trainer at Roxbury High School.
As a result, you are not to have any written, verbal, or personal contact with her for the remainder of the school year. As you are aware, I have been directed to complete her formative and summative evaluations. Therefore, if you have concerns regarding her job performance, continue to address them in written form to me, and I will discuss them with Ms. Sieka.
Thank you for your cooperation.
Siems allegedly told Ramey during the meeting that plaintiff said "something ... to the effect that women coaches didn't deserve what men coaches did because they didn't work as hard or couldn't produce as well." The female coaches also alleged that plaintiff favored the male coaches in various ways, including giving them preferential schedules for teaching assignments, larger budgets and greater access to the gymnasium and other facilities. Ramey indicated that the meeting concluded with an agreement that he would write to plaintiff and demand that he cease his improper conduct and also inform the Board that a sexual discrimination and/or harassment complaint would be filed if plaintiff continued such conduct.
In accordance with this agreement, Ramey sent two letters, both dated March 27, 1997, which form the basis of this defamation action. One letter, which was sent to plaintiff, with copies to the superintendent of schools and the principal of Roxbury High School, stated in pertinent part:
A significant number of complaints have come to my office from members of the physical education department and athletic coaching staff regarding your behavior toward and treatment of them. Specifically there are rather compelling and serious allegations of sexual harassment, gender discrimination and unfair treatment.
I am fully aware that several grievances and affirmative action complaints have been lodged against you. It has been established that you have been relieved of your duties as evaluator of several female employees and have most recently been ordered to refrain from "any written, verbal, or personal contact ..." with at least one member of your department.
I am currently launching a full-scale investigation into these allegations and at this moment I am authorizing NJEA *1200 legal services to provide assistance to our members who have experienced your illegal, immoral and unprofessional behavior. I must state to you as directly as I can that the actions attributed to you are unacceptable and that we will spare no expense to pursue legal action against you if you continue to harass or discriminate against any of the employees under your authority. I will do all in my power to protect the members of the Roxbury Association including contact with the Morris County prosecutor's office if necessary.
I have also learned that current and former building and district level administrators are aware of these charges and have directed you to desist. I must encourage you to follow the directives of these administrators. Failure to do so could result in serious legal and financial liabilities to you and to the district.
The second letter, which was sent directly to the superintendent of schools, stated: It is with great regret that I must write to you on behalf of the Association and the female members of the Physical Education Department. As you are already aware, there have been several grievances and affirmative action complaints filed against Mr. Ron Standridge, the athletic director.
I have been asked to investigate this situation and I am very concerned at the mounting evidence of discrimination against female teachers and coaches, allegations of sexual harassment and other alleged unfair treatment. I can assure you that the NJEA takes these cases very seriously and I am presently authorizing legal services to begin possible proceedings against Mr. Standridge. We are disappointed that your office has allowed this intolerable situation to progress to this point.
I must advise you that under current case law, the Roxbury School District and you as Superintendent can be held liable if evidence of illegal harassment is brought to your attention and nothing is done to remedy the situation. If you cannot control the behavior of this administrator you will leave me no alternative but to seek legal action to stop him from harassing and discriminating against female employees under his supervision. If forced to act in this manner, we will also hold the district responsible for its failure to respond to our numerous complaints on record for more than a year.
I am very aware that current and former building and district level administrators share our concern for the safety and well being of the female employees in Roxbury. The Association is seeking your assurances that this behavior will cease and that these employees will be protected. We anxiously await your reply to our request for action.
The alarm is sounding. I can only hope that someone will hear it!
Within a short time after receiving these letters, the superintendent of schools recommended to the Board that plaintiff, who did not have tenure, should not be reappointed for the following school year. By a five to four vote, the Board subsequently decided not to reappoint plaintiff.
This defamation action followed. Plaintiff's amended complaint names as defendants not only Ramey, the NJEA, Sieka, Siems, Reu and Johnston, but also the Roxbury Education Association, two officers of the Roxbury Education Association[1] and the former Roxbury Superintendent of Schools.
After Ramey's and plaintiff's depositions had been completed, but before plaintiff had an opportunity to depose Sieka, Siems, Johnston and Reu, Ramey and the NJEA moved for summary judgment. The trial court denied the motion in a brief oral opinion. The court indicated that it would assume plaintiff was a "public official" or "public figure" and consequently that he *1201 would have to show "actual malice" to prevail. However, the court concluded that a witness's statement that he had overheard Ramey say, "We got him. I got it to the press, forget the fliers. He's finished," was sufficient to satisfy this standard. The court stated that "[v]iewing this statement in the light most favorable to the plaintiff, it certainly inferentially could be found that Ramey was acting with others to defame Standridge, getting matters which should have been confidential or at least for the eyes of the persons that needed to see them to make administrative decisions to the press."
We subsequently granted a motion by Ramey and the NJEA for leave to appeal from the order denying their motion for summary judgment. After a full review of the record, we have concluded that the motion for summary judgment was premature. Accordingly, we affirm the denial of this motion.
The threshold issue in this appeal is whether plaintiff's defamation claim is governed by the standard of "actual malice,"that is, whether plaintiff must show by clear and convincing evidence that defendants' alleged defamatory statements were made with "knowledge" of their falsity or with "reckless disregard" for their truth or falsity. New York Times Co. v. Sullivan, 376 U.S. 254, 279, 84 S.Ct. 710, 726, 11 L.Ed.2d 686, 706 (1964). To establish the applicability of the actual malice standard, a defamation action defendant must show that the plaintiff is a "public official," id. at 279-80, 84 S.Ct. at 726, 11 L.Ed.2d at 706, "public figure," Curtis Publ'g Co. v. Butts, 388 U.S. 130, 154, 87 S.Ct. 1975, 1991, 18 L.Ed.2d 1094, 1111 (1967), or "limited purpose public figure," Gertz v. Robert Welch, Inc., 418 U.S. 323, 351, 94 S.Ct. 2997, 3012, 41 L.Ed.2d 789, 812 (1974). In addition, our Supreme Court has held that, as a matter of state common law, the actual malice standard also governs a defamation claim by a person "who has voluntarily and knowingly engaged in conduct that one in his position should reasonably know would implicate a legitimate public interest, engendering the real possibility of public attention and scrutiny." Sisler v. Gannett Co., 104 N.J. 256, 274, 516 A.2d 1083 (1986).
Our courts have taken an expansive view of the types of government employees who qualify as "public officials." See, e.g., Costello v. Ocean County Observer, 136 N.J. 594, 613-14, 643 A.2d 1012 (1994) (police lieutenant); Vassallo v. Bell, 221 N.J.Super. 347, 361-64, 534 A.2d 724 (App.Div. 1987) (building inspector); Eadie v. Pole, 91 N.J.Super. 504, 508, 221 A.2d 547 (App.Div.1966) (tax assessor). For example, the Court in Costello stated:
The "`public official' designation applies at the very least to those among the hierarchy of government employees who have, or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs."
....
As a police lieutenant, Costello's responsibilities to the public exceed those owed by officers on patrol. In addition to being visible to the public and possessing authority to use force, a lieutenant supervises other officers. ... The public therefore has a valid interest in Costello's qualifications and on-the-job behavior as a lieutenant. ...
We thus determine that Costello, a police lieutenant who is challenging an article purporting to describe his official conduct, is a public official and must meet the actual-malice standard.
[136 N.J. at 613-14, 643 A.2d 1012 (citations omitted).]
Plaintiff's position with the Roxbury Board of Education involved at least as much public visibility and responsibility for the conduct of governmental affairs as Costello's police lieutenant position. As athletic director, plaintiff was responsible for managing and supervising all the athletic programs in the Roxbury school district, including twenty-four athletic teams. In performing these responsibilities, plaintiff *1202 administered a substantial budget and supervised approximately sixty coaches and other employees. He also spoke at booster club meetings and various other community functions. Moreover, we take note of the fact that the performance of high school athletic teams is often a matter of substantial public interest within a community. Therefore, we conclude that plaintiff was a "public official" and must show actual malice to establish his defamation claims against the NJEA and Ramey. See Johnson v. Southwestern Newspapers Corp., 855 S.W.2d 182, 185-87 (Tex.Ct.App. 1993) (holding that head high school football coach and athletic director of school district was "public official" subject to "actual malice" standard).[2]
A plaintiff cannot show "actual malice" merely by presenting evidence that a defendant negligently published a defamatory statement without conducting an adequate investigation concerning its truthfulness. "[R]eckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." St. Amant v. Thompson, 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262, 267 (1968); accord Lawrence v. Bauer Publ'g & Printing Ltd., 89 N.J. 451, 466, 446 A.2d 469, cert. denied, 459 U.S. 999, 103 S.Ct. 358, 74 L.Ed.2d 395 (1982). Moreover, a plaintiff cannot establish a factual issue as to the existence of "actual malice" simply by presenting evidence that a defendant has exhibited hostility towards him. Burke v. Deiner, 97 N.J. 465, 477, 479 A.2d 393 (1984); LoBiondo v. Schwartz, 323 N.J.Super. 391, 409-11, 733 A.2d 516 (App.Div. 1999); Ferraro v. City of Long Branch, 314 N.J.Super. 268, 290, 714 A.2d 945 (App.Div.), certif. denied, 157 N.J. 541, 724 A.2d 801 (1998); Marchiano v. Sandman, 178 N.J.Super. 171, 174-75, 428 A.2d 541 (App.Div.), certif. denied, 87 N.J. 392, 434 A.2d 1073 (1981).
Applying these principles, we agree with defendants that the trial court erred in concluding that Ramey's alleged statement, "We got him. I got it to the press, forget the fliers. He's finished," is sufficient to establish a factual issue as to the existence of actual malice. Although this statement is evidence of Ramey's hostility towards plaintiff and desire to see him removed, it would not provide an adequate foundation for a finding that Ramey knew that the statements in his March 27th letters were false or that he acted in reckless disregard of the truth or falsity of those statements. Ramey's alleged desire to remove plaintiff from his position, and his expression of satisfaction over the anticipated accomplishment of this goal, would be equally consistent with Ramey's assertion that he believed the allegations about plaintiff's improper conduct made to him by Sieka and the three coaches.
Nevertheless, we conclude that plaintiff should be afforded an opportunity to complete discovery before his claim is subject to dismissal by a motion for summary judgment. We recognize that our Supreme Court has repeatedly indicated that summary judgment is "an important tool for disposing of non-meritorious libel lawsuits." Costello, supra, 136 N.J. at 605, 643 A.2d 1012; accord Dairy Stores, Inc. v. Sentinel Publ'g Co., 104 N.J. 125, 157, 516 A.2d 220 (1986); Kotlikoff v. The Community News, 89 N.J. 62, 67-68, 444 A.2d 1086 (1982); Maressa v. New Jersey Monthly, 89 N.J. 176, 196-97, 445 A.2d 376, cert. denied, 459 U.S. 907, 103 S.Ct. 211, 74 L.Ed.2d 169 (1982). However, it is also firmly established that a party is entitled to conduct full discovery to find support for a claim before a motion for *1203 summary judgment will be entertained, especially when critical facts are within the knowledge of other parties to the action. See James v. Bessemer Processing Co., 155 N.J. 279, 311, 714 A.2d 898 (1998); Velantzas v. Colgate-Palmolive Co., 109 N.J. 189, 193, 536 A.2d 237 (1988); Bilotti v. Accurate Forming Corp., 39 N.J. 184, 193, 188 A.2d 24 (1963). Another well-established principle of summary judgment practice is that a court should not grant summary judgment if a case presents a genuine, material issue as to a party's state of mind. Costello, supra, 136 N.J. at 615, 643 A.2d 1012; Shebar v. Sanyo Bus. Sys. Corp., 111 N.J. 276, 291, 544 A.2d 377 (1988); Judson v. Peoples Bank & Trust Co., 17 N.J. 67, 76, 110 A.2d 24 (1954).
Our Supreme Court's encouragement of the use of summary judgment practice in defamation actions does not mean that a defamation plaintiff has a more circumscribed right to discovery than plaintiffs in other types of cases. To the contrary, there is an especially strong need for full discovery in a defamation action brought by a plaintiff who is classified as a "public official." The actual malice element of a defamation claim by a public official involves state of minddid the defendant make the alleged defamatory statement with "knowledge" of its falsity or with "reckless disregard" for its truth or falsity? Costello, supra, 136 N.J. at 614, 643 A.2d 1012. To prove this state of mind, a plaintiff generally will need to depose not only the defendant but also any other person who the defendant claims to have been a source of the alleged false information contained in the defamatory statement.
The Court in Maressa took specific note of the proof problems confronted by a plaintiff who must show actual malice in a defamation action, and indicated that a trial court should exercise caution in deciding this issue on a motion for summary judgment:
In libel actions, summary judgment may be more appropriate on some issues than on others. We have said that trial courts should not hesitate to grant summary judgment for defendant in cases of privileged expressions of opinion. However, summary judgment poses a more difficult problem where the issue is whether a defendant has published a defamatory falsehood with actual malice. As the United States Supreme Court has cautioned, the issue of a defendant's state of mind "does not readily lend itself to summary disposition." As noted, a public figure must prove that the libel was published with actual malice. Furthermore, that proof must be "clear and convincing". Courts should carefully examine the circumstances surrounding publication of defamatory allegations of fact to determine whether the issue of actual malice should go to the jury.
[89 N.J. at 197 n. 10, 445 A.2d 376 (citation omitted).]
See also Hutchinson v. Proxmire, 443 U.S. 111, 120 n. 9, 99 S.Ct. 2675, 2680, 61 L.Ed.2d 411, 422 (1979) ("The proof of `actual malice' calls a defendant's state of mind into question, ... and does not readily lend itself to summary disposition."); Costello, supra, 136 N.J. at 615, 643 A.2d 1012 ("Because the issue of a defendant's state of mind `does not readily lend itself to summary disposition,' courts are wary of disposing of cases involving actual malice through summary judgment."); see generally, Rodney A. Smolla, Law of Defamation § 12.07 (1998).
In the present procedural posture of this case, we are not called upon to decide whether it would be appropriate to decide the issue of actual malice by a motion for summary judgment. The only question before us is whether plaintiff has been afforded an adequate opportunity to conduct all discovery relevant to this issue.
We conclude that plaintiff is entitled to conduct additional discovery before the trial court entertains a motion for summary judgment by Ramey and the NJEA. At a minimum, plaintiff should be permitted to depose everyone who attended the March 25th meeting between Ramey and the female members of the athletic department who complained about plaintiff's alleged *1204 sexual harassment and discrimination, because Ramey claims that he relied upon the information provided to him at that meeting in preparing the two letters which form the basis of plaintiff's claim. Consequently, if other persons who attended the meeting contradict or give materially different accounts of what was said to Ramey, this could provide a basis for finding that the alleged defamatory statements in Ramey's letters were made with knowledge of their falsity or reckless disregard of their truth. Plaintiff also should be permitted to conduct any discovery reasonably calculated to determine Ramey's role, if any, in the dissemination of the letters to the media or other outside parties, because that dissemination may provide an independent basis for the imposition of liability, especially if Ramey acquired additional information concerning the truthfulness of the contents of the letters after sending them to plaintiff and the superintendent.
Accordingly, we affirm the order denying the motion for summary judgment filed by Ramey and the NJEA and remand to the trial court. Upon remand, plaintiff should be permitted to complete discovery, after which Ramey and the NJEA should be afforded an opportunity to renew their motion for summary judgment.
NOTES
[1] On February 6, 1998, plaintiff's complaint was consolidated with a sex discrimination complaint which Sieka, Siems, Johnston and Reu have filed against plaintiff and the Board.
[2] Because we conclude that plaintiff was a public official, we have no need to decide whether the actual malice standard also would apply, as a matter of state common law, because plaintiff "voluntarily and knowingly engaged in conduct that one in his position should reasonably know would implicate a legitimate public interest." Sisler, supra, 104 N.J. at 274, 516 A.2d 1083.