958 A.2d 1023 (2008)
403 N.J. Super. 403
Thomas John SALZANO, Plaintiff-Appellant,
v.
NORTH JERSEY MEDIA GROUP, INC., d/b/a The Record, NorthJersey.com, Malcolm Borg, Stephen A. Borg, Martha McKay, and Jonathan Markey, Defendants-Respondents, and
Glen Ridge Voice, Inc., and Frank A. Orechio, Defendants.
No. A-6715-06T1
Superior Court of New Jersey, Appellate Division.
Argued October 16, 2008.
Decided November 12, 2008.
*1025 Thomas John Salzano, appellant, argued the cause pro se.
Bruce S. Rosen, Florham Park, argued the cause for respondents (McCusker, Anselmi, Rosen & Carvelli, attorneys; Mr. Rosen, on the brief).
Before Judges CUFF, FISHER and C.L. MINIMAN.
The opinion of the court was delivered by
FISHER, J.A.D.
In this appeal, we reverse the dismissal of the complaint because defendants were not privileged to republish alleged defamatory statements within a bankruptcy court complaint and, absent the shield of the fair report privilege, they failed to demonstrate the statements were true or nondefamatory. We also hold that, although a private person, plaintiff was embroiled in a public matter and must be held to the actual malice standard, but we also hold that he should be permitted to amend his complaint.

I
The complaint filed in this matter by plaintiff Thomas John Salzano (Salzano) was triggered by articles published in two newspapers, The Record and The Glen Ridge Voice, and placed on two websites, NorthJersey.com and LeasingNews.org. These articles reported on a complaint, which was filed by the trustee for the bankruptcy estate of NorVergence, Inc., against Salzano on March 1, 2006, in the United States Bankruptcy Court for the District of New Jersey. The complaint in this adversary proceeding in the NorVergence bankruptcy matter (the bankruptcy complaint) alleged that Salzano, the son of Thomas N. Salzano, who was NorVergence's former chief managing officer, "unlawfully diverted, converted and misappropriated" NorVergence's funds "for his own personal benefit."
Specifically, the trustee claimed that, in July 2003, Salzano negotiated two NorVergence checks in the approximate amount of $200,000 for the purchase of a residence in Glen Ridge. The trustee also alleged that Salzano charged $268,795.84 in "personal expenses, such as outings to bars and clubs, clothing and other personal expenses, *1026 between November 25, 2002 and March 24, 2004" against NorVergence's American Express Business Gold/Platinum account, and that other unspecified credit cards were similarly misused.
The bankruptcy complaint consisted of five counts. The first two counts urged the application of federal and state law in seeking avoidance of what the trustee claimed were fraudulent conveyances made by NorVergence to Salzano. The third count alleged conversion, the fourth count claimed that Salzano was unjustly enriched, and the fifth count sought the imposition of a constructive trust on Salzano's Glen Ridge property.
On March 2, 2006, The Record published an article with the headline "Man accused of stealing $500,000 for high living." A smaller headline declared that "NorVergence funds were taken," and the beginning of the article, authored by defendant Martha McKay, stated:
The son of the mastermind behind NorVergence, a bankrupt Newark telecommunications firm, allegedly stole close to $500,000 from the company, using the money to pay for drinks, trips to area clubs and for a five-bedroom Glen Ridge house, according to court papers filed Wednesday in U.S. Bankruptcy Court in Newark.
Thomas John Salzano, son of Thomas N. Salzano, the chief management officer of bankrupt NorVergence, was accused of using two company checks one in the amount of $61,200 dated July 1, 2003, and another for $140,000 dated July 29, 2003to help pay for "the purchase of his personal residence located [in] Glen Ridge," the papers said.
In addition, the article recounted other aspects of the bankruptcy complaint, and synopsized some of the events that led NorVergence into bankruptcy, with a brief description of the losses allegedly sustained by NorVergence employees, investors and customers as a result. The article also indicated that Salzano and his father "started a Kenilworth business last year called Charity Snack, which also went belly-up."
This same article was posted on March 2, 2006 by defendant at NorthJersey.com. On March 9, 2006, the article was included in The Glen Ridge Voice under the headline: "Argyle residence allegedly bought with stolen funds," and was also posted at LeasingNews.org, under the headline "NorVergence BK charges Salzano son stealing $1/2 MM."
As a result of these articles, Salzano filed suit in the Law Division against defendants North Jersey Media Group, Inc. (North Jersey), the publisher of The Record; NorthJersey.com; Malcolm Borg, the chief executive officer of North Jersey; Jonathan Markey, the president of North Jersey; Stephen A. Borg, the editor/publisher of The Record and NorthJersey.com; Martha McKay, a staff reporter for The Record; Glen Ridge Voice, Inc., which was alleged to be the publisher of The Glen Ridge Voice; and Frank A. Orechio, the alleged president of The Glen Ridge Voice. In his complaint, Salzano asserts that he became "unwittingly embroiled" in the bankruptcy proceedings through the trustee's assertion of "baseless and unsupported" claims against him, which these defendants republished "intentionally, maliciously, and with reckless and/or negligent disregard of the truth." He also claims that defendants added far more sinister innuendo to the trustee's claims by referring to the bankruptcy complaint as alleging that Salzano "stole" from NorVergence, thereby, in Salzano's words, "egregiously infer[ring] criminal implications and immorality, which is completely and factually inaccurate, false and libelous." Based on these and other allegations, *1027 Salzano pled seven counts in his complaint, which he labeled: defamation-libel, gross negligence, invasion of privacy (public disclosure of private facts), invasion of privacy (false light invasion), malice, negligent infliction of emotional distress, and intentional infliction of emotional distress.
All defendants except Glen Ridge Voice Inc. and Frank A. Orechio[1] moved for a dismissal of the complaint for failing to state a claim upon which relief may be granted. R. 4:6-2(e). Even though less than all the named defendants moved for dismissal, the judge entered a final order that dismissed the complaint as to all defendants. The judge's entire oral opinion states:
Look, I'm going to grant the motion aswith regard to the named defendants in the motion for several reasons. One is I do not feel that the defendant that the plaintiff's position with regard to the statements is a reasonable interpretation of that and that, in any case, thethis matter is subject to the heightened standard of malice and that there is in fact no reasonable showing of any malice. I can understand why plaintiff is upset with regard to the reporting as not being totally, 100 percent accurate. But that's not the standard that we apply. And based on the arguments presented I find that this matterthat the complaint does fail to state a cause of action in defamation with regard to these particular defendants. And I so rule.
Although the judge's opinion fails to provide an adequate explanation for his disposition of the many issues presented, we discern from the judge's statementthat the moving defendants (hereafter "defendants") were not required to be "totally, 100 percent accurate"that the judge applied the fair report privilege in dismissing the complaint. The judge's opinion also suggests that he found as an alternative basis for dismissal what he viewed as Salzano's imperfect allegation of actual malice. We find that the judge mistakenly dismissed the complaint and reverse.

II
Although many arguments have been presented, we need not consider all of them because we conclude that reversal is mandated because (a) absent application of the fair report privilege, defendants were requiredand failedto demonstrate that the statements they republished about Salzano were made by the trustee and are substantively true; (b) the fair report privilege does not apply to defendants' reports about the bankruptcy complaint; and (c) even though Salzano was required to plead and must ultimately prove actual malice in this action, he should first be provided with an opportunity to file an amended complaint.[2]

*1028 A
Defendants have argued that we need not consider whether or to what extent the fair report privilege may apply to their articles. Defendants are certainly correct that, absent application of the fair report privilege, the matter must be analyzed by determining whether the statements are false and, if so, whether they are susceptible to a defamatory meaning, Romaine v. Kallinger, 109 N.J. 282, 290, 537 A.2d 284 (1988), but they then confuse these requirements with the principles of the fair report privilege. In other words, in asserting the truth of the statements contained in the article, defendants rely upon the alleged accuracy of their report of the bankruptcy complaint without attempting to demonstrate the truth of the trustee's allegations.
To obtain dismissalabsent a privilege to republish a defamatory statement "the reporter or newspaper must verify that a statement was spoken, and also that the substance of the statement is true." Costello v. Ocean County Observer, 136 N.J. 594, 606, 643 A.2d 1012 (1994) (emphasis added). Here, absent the benefit of the fair report privilege, defendants are left to argue that the trustee said that Salzano stole money and that there is truth in what the trustee asserted. In other words, when a defendant publishes "that a third person stated that plaintiff has committed a crime, it is no justification that the third party did in fact make that statement." Lawrence v. Bauer Publ'g & Printing Ltd., 89 N.J. 451, 461, 446 A.2d 469, cert. denied, 459 U.S. 999, 103 S.Ct. 358, 74 L.Ed.2d 395 (1982); see also Fortenbaugh v. N.J. Press, Inc., 317 N.J.Super. 439, 453-54, 722 A.2d 568 (App.Div.), certif. denied, 160 N.J. 91, 733 A.2d 496 (1999). The record does not support a finding that Salzano stole money or even that he was the recipient of a fraudulent conveyance. Defendants' arguments address only the first half of what these authorities say must be demonstrated; the record is silent on the second half of the equation.
There is also no merit in defendants' argument that saying a person is a thief or is the recipient of stolen funds, without a suggestion of a past or present criminal investigation or prosecution, is not actionable without proof of damage to a person's reputation. The law is to the contrary. See Prosser and Keeton on Torts § 112 at 788-89 (5th ed. 1984). That is, defendants argue that the entire context of the articlesdespite the summary in the headline that Salzano "stole money" indicates only that Salzano was the target of a civil suit regarding his alleged receipt of NorVergence assets, and that there is no hint or suggestion in the article that Salzano had been or would be criminally prosecuted. We find no substance in the argument that there is no defamatory meaning associated with the reference to a person as a thief or the recipient of stolen funds absent an indication that law enforcement authorities are involved in proving that fact or that the target of the article has been convicted of such a crime. Either assertion suggests that the target of the comments has engaged in a criminal act, N.J.S.A. 2C:20-7 (receiving stolen property), or an act of moral turpitude regardless of whether the person is the subject of a criminal investigation or has been formally charged with a crime. Restatement (Second) of Torts § 571 (1977) *1029 ("One who publishes a slander that imputes to another conduct constituting a criminal offense is subject to liability to the other without proof of special harm if the offense imputed is of a type which, if committed in the place of publication, would be (a) punishable by imprisonment in a state or federal institution, or (b) regarded by public opinion as involving moral turpitude").
We thus reject defendants' argument that the order of dismissal, insofar as it is based upon the alleged accuracy of their report on the bankruptcy complaint, can be sustained without resort to the fair report privilege.

B
In discussing the fair report privilege in their submissions in this court, defendants argue that the trial judge "never addressed" the fair report privilege in dismissing the complaint. If that is true, we fail to understand how that aids defendants' position. However, we discern from the judge's oral decision that he found an absence of a false and defamatory meaning because defendants, in his view, accurately reported what the bankruptcy trustee allegeda holding that would presuppose the judge's application of the fair report privilege. In any event, regardless of whether the judge actually relied upon it, we deem it appropriate to examine whether the fair report privilege is a ground upon which dismissal may fairly rest.
Defendants essentially argue that they did not defame Salzano because they truthfully recounted what the trustee alleged. Whether that argument should be sustained requires consideration (1) of the purpose and scope of the fair report privilege, (2) whether defendants' report of the bankruptcy complaint was both accurate and fair, and (3) whether the fair report privilege applies to reports about the contents of initial pleadings.

(1)
The fair report privilege was thoroughly examined in Costello, supra, 136 N.J. at 606, 643 A.2d 1012, where the Court summarized the privilege's legal underpinnings and the tension between competing policies it evokes in the following way:
"The law of defamation embodies the important public policy that individuals should generally be free to enjoy their reputations unimpaired by false and defamatory attacks." Privileges that restrict recovery for defamation reflect the competing "paramount public interest [in] permitting persons to speak or write freely without being restrained by the possibility of a defamation action." They are "designed to protect speech in those narrowly defined instances in which the public interest in unrestrained communication outweighs the right of redress."
[Citations omitted.]
In its thorough discussion, the Court recognized the general rule, which we discussed previously, that "to republish a defamatory statement, the reporter or newspaper must verify that a statement was spoken, and also that the substance of the statement is true," but also recognized that the fair report privilege "is an exception to the general rule that imposes liability for republication of a defamatory statement." Ibid. (citing Swede v. Passaic Daily News, 30 N.J. 320, 332-33, 153 A.2d 36 (1959)).
The Court further recognized that the purpose of the fair report privilege was "to assure that people who report on official releases about public concerns will not be held responsible for the contents of the reports," id. at 607, 643 A.2d 1012 (quoting *1030 Schiavone Constr. Co. v. Time, Inc., 847 F.2d 1069, 1085 (3d Cir.1988)), and, as a result, explained that the privilege had application "to reports of defamatory statements made in judicial and other official proceedings," because
[p]rotection for such republication furthers the public interest "that information be made available as to what takes place in certain kinds of judicial, legislative, and other public proceedings." Prosser and Keeton on Torts § 115 (5th ed. 1984). The underlying rationale is that "any member of the public, if he were present, might see and hear for himself [statements made at a public proceeding], so that the reporter is merely a substitute for the public eye." Ibid. In [Rogers v. Courier Post Co., 2 N.J. 393, 402, 66 A.2d 869 (1949)], we defined the fair-report privilege as follows: "[a] full, fair and accurate report of a judicial proceeding is qualifiedly privileged, although the report contains matters that would otherwise be defamatory and actionable, and no action will lie therefor except on proof of malice in making it."
[Costello, supra, 136 N.J. at 607, 643 A.2d 1012.]
Having stated its purpose and the competing interests that it reflects, the Costello Court explained what must be shown for the fair report privilege to apply in a given case. First, a court must ascertain, through application of an objective test, whether the report is "a full, fair and accurate account of the official proceeding." Ibid. (citing Bock v. Plainfield Courier-News, 45 N.J.Super. 302, 132 A.2d 523 (App.Div.1957)); see also Sedore v. Recorder Publ'g Co., 315 N.J.Super. 137, 152, 716 A.2d 1196 (App.Div.1998). In this regard, the Court relied upon and quoted from Restatement, supra, § 611 comment f, declaring that the report of public proceedings should not convey an erroneous impression to those who read or hear it; that "[i]t is not necessary that [the account] be exact in every immaterial detail"; but that "[i]t is enough that it conveys to the persons who read it a substantially correct account of the [contents of the official document]." Costello, supra, 136 N.J. at 607, 643 A.2d 1012.
In addition, the Costello Court held that the report must not only meet this test of accuracy but that it "must also be fair," id. at 608, 643 A.2d 1012, explaining:
A report that is accurate may not be edited and deleted in a way that renders its contents misleading. Fairness requires that although the report need not be exhaustive, "it is necessary that nothing be omitted or misplaced in such a manner as to convey an erroneous impression to those who hear or read it." Although a reporter is allowed to make factual errors and omissions, the fair-report privilege will not protect a story if the errors and omissions mislead readers.
[Ibid. (quoting Restatement, supra, § 611 comment f).]
In applying these principles, the Costello Court concluded that an article was inaccurate because it used the present tense in its headline and opening paragraph to suggest that legal action was pending when, in fact, no complaint had been filed. 136 N.J. at 608-09, 643 A.2d 1012. And, in Schiavone, the court held that a report accurately indicated that plaintiff's name had been mentioned in a confidential FBI memo in connection with the disappearance of Jimmy Hoffa, but failed to mention that the report expressly stated that the reference to plaintiff did not suggest any criminality or organized crime associations; the court concluded that this omission presented "a clear example of an unfair report that does *1031 not deserve the qualified privilege to reproduce a libel." 847 F.2d at 1088.

(2)
Salzano alleges defendants' report about the bankruptcy complaint was not accurate or fair because defendants erroneously stated that the trustee alleged Salzano stole funds from NorVergence, whereas, in Salzano's interpretation, the trustee had only alleged that Salzano was the recipient of NorVergence funds that had been fraudulently diverted. Defendants respond that "reasonable persons of ordinary intelligence," Romaine, supra, 109 N.J. at 290, 537 A.2d 284, would understand there is little distinction between the two assertions, and, regardless, the trustee had actually alleged that Salzano had misappropriated NorVergence funds.
We must initially recognize that defendants' arguments are asserted in support of an order that dismissed the complaint for failure to state a claim upon which relief may be granted, and the test for determining the adequacy of a pleading is whether a cause of action is suggested by the facts. Velantzas v. Colgate-Palmolive Co., 109 N.J. 189, 192, 536 A.2d 237 (1988). In applying this test, the reviewing court must search the complaint "in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary." Printing Mart-Morristown v. Sharp Electronics Corp., 116 N.J. 739, 746, 563 A.2d 31 (1989) (quoting Di Cristofaro v. Laurel Grove Mem. Park, 43 N.J.Super. 244, 252, 128 A.2d 281 (App.Div.1957)). This approach requires that we determine whether there is an arguable basis for Salzano's contention that the article expresses or implies more reprehensible conduct than alleged in the bankruptcy complaint.
There is no doubt that the article's headline and opening paragraph assert that Salzano "stole" NorVergence funds. To obtain a more precise understanding of the bankruptcy complaintnamely, that assets of NorVergence were fraudulently diverted to Salzanothe reader must consider the additional information conveyed later in the articles. Although the articles' opening salvo that Salzano stole funds is not perfectly accuratethe trustee never used the word "stole"the question we must decide is whether the sting of the article conveys essentially the same sting as the bankruptcy complaint. Lawrence, supra, 89 N.J. at 460, 446 A.2d 469. We conclude that it does.
The "sting" is derived not only from the particular words alleged to be defamatory, but also from a reasonable understanding of those words, read in conjunction with the article's headline, Molin v. The Trentonian, 297 N.J.Super. 153, 158, 687 A.2d 1022 (App.Div.), certif. denied, 152 N.J. 190, 704 A.2d 20 (1997), cert. denied, 525 U.S. 904, 119 S.Ct. 239, 142 L.Ed.2d 196 (1998), and with appreciation for its entire context, Romaine, supra, 109 N.J. at 288, 537 A.2d 284. Here, the essence of the judicial proceeding reported upon is that the trustee sought civil remedies against Salzano as a result of what the trustee claims to be his fraudulent receipt of NorVergence assets. In that regard, the bankruptcy complaint alleged that Salzano had "unlawfully diverted, converted and misappropriated" NorVergence's funds "for his own personal benefit." Although a finer point can be put on these allegations in consideration of the theories for recovery asserted by the trustee, the words utilized by defendants to recount what the trustee had alleged carry the same essential sting. That is, there is no material difference in this setting between an allegation that a person stole funds or *1032 that a person received stolen funds, but because the trustee also asserted that Salzano had "unlawfully diverted, converted and misappropriated" NorVergence's fundsthe sting of the article's claim that Salzano "stole" funds is indistinguishable from the actual content of the bankruptcy complaint.
As a result, even though the standard of review requires liberality in the interpretation of the complaint, Printing Mart-Morristown, supra, 116 N.J. at 746, 563 A.2d 31, we cannot adopt Salzano's assertion that defendants' claim that the trustee alleged Salzano had "stolen" the debtor's funds has a greater sting than the trustee's actual allegations. Accordingly, if we were to apply the fair report privilege, we would conclude that defendants' articles provided a fair and accurate description of the trustee's allegations.

(3)
Even though defendants fairly and accurately reported the content of the bankruptcy complaint, we conclude that defendants are not entitled to assert the privilege in this instance.
The Court in Costello determined that the fair report privilege does not apply to "[t]he publication ... of the contents of preliminary pleadings such as a complaint or petition, before any judicial action has been taken...." 136 N.J. at 611, 643 A.2d 1012 (quoting Restatement, supra, § 611 comment e). The Court held that "[t]o rule otherwise would promote the filing of lawsuits that would be promptly discontinued once the goal of public defamation or even extortion were achieved." Id. at 612, 643 A.2d 1012. See also Restatement, supra, § 611 comment e (observing that "[a]n important reason for this position has been to prevent implementation of a scheme to file a complaint for the purpose of establishing a privilege to publicize its content and then dropping the action"); Prosser, supra, § 115 at 837 (observing that "it is the prevailing view, with some few courts to the contrary, that a pleading or a deposition filed in a case but not yet acted upon may not be reported under the claim of privilege"). As succinctly observed by Justice Holmes, this exception to the privilege is based upon "the plain distinction between what takes place in open court, and that which is done out of court by one party alone." Cowley v. Pulsifer, 137 Mass. 392, 395 (1884). The fair report privilege applies only to the former instance, not the latter. The bankruptcy complaint was the initial pleading in the trustee's claim against Salzano and, thus, constituted an act of "one party alone."
Defendants, however, would have us adopt a more nuanced approach to the initial pleading exception to the fair report privilege. They assert that this particular exception should not apply when the initial pleading is filed "by government officials, such as a U.S. Trustee, County Prosecutor, U.S. Attorney, or police." Although defendants do not explain why they believe such a distinction should be drawn, we assume they are suggesting that government officials are not likely to engage in the type of misconduct asserted as a basis for the initial pleading exception.
In support of this theory, defendants have cited only to cases from other jurisdictions that are immediately distinguishable because these other jurisdictions do not even recognize the initial pleading exception to the fair report privilege. See Kamsler v. Chicago Am. Publ'g Co., 82 Ill.App.2d 86, 225 N.E.2d 434, 437 (1967); First Lehigh Bank v. Cowen, 700 A.2d 498, 502 (Pa.Super.1997); Mark v. King Broad. Co., 27 Wash.App. 344, 618 P.2d 512, 518, aff'd, 96 Wash.2d 473, 635 P.2d 1081, 1089 (1981), cert. denied, 457 U.S. 1124, 102 *1033 S.Ct. 2942, 73 L.Ed.2d 1339 (1982). We would add that the initial pleading exception to the fair report privilege has also been rejected in New York. Campbell v. N.Y. Evening Post, 245 N.Y. 320, 157 N.E. 153, 155-56 (1927) (finding its continued application to be "indefensible"). Defendants, however, have not referred us to a single decision in which a courtin a jurisdiction that recognizes the initial pleading exceptioninsisted that it apply only to private litigants and not governmental litigants. Considering that in Costello our Supreme Court adopted the initial pleading exception without hinting at the possibility of the approach urged by defendants, we decline to adopt a nuanced limitation upon that exception. Although we would prefer to think otherwise, we are not so naïve as to believe there are not unscrupulous persons in government who might exceed or abuse their authority by engaging in the type of tactic that justified adoption of the initial pleading exception. We need look no further than the abuses of the McCarthy era for justification of our rejection of defendants' novel argument.
Moreover, even if we were to adopt defendants' theory, we would note that they have not shown that the circumstances here would permit its application. Although defendants argue that the bankruptcy complaint lodged against Salzano was filed by the United States Trustee,[3] the pleading itself suggests otherwise. The complaint was filed by the law firm of Porzio, Bromberg & Newman, which is identified in the pleading as special litigation counsel for Charles M. Forman, who is identified in the complaint as "the duly appointed and acting Chapter 7 Trustee of the bankruptcy estate of NorVergence, Inc." Another paragraph of the complaint belies the claim that Forman was actually the United States Trustee by alleging that "[o]n July 14, 2004, the Office of the United States Trustee appointed Charles M. Forman to serve as the Trustee for the Debtor's Chapter 7 Estate." In short, taken at face value, the complaint was not filed by the United States Trustee; it was filed by a law firm retained by another lawyer who was appointed by the United States Trustee to serve as the trustee for the debtor's estate. As a result, although we are not inclined to adopt a limitation on the initial pleading exception to the fair report privilege, even if we did we would not apply it in these circumstances.
To summarize, because the trustee's complaint was filed in the bankruptcy court the day prior to the first of these articles, and was not subject to any sort of judicial review by the time the articles were published, we must conclude that the fair report privilege does not apply and defendants were not relieved of liability for republishing the alleged defamatory statements contained within the bankruptcy complaint on that basis.

C
Defendants lastly argue that Salzano is a public figure or a private figure involved in a matter of public concern, that the actual malice standard applies to their articles, and that the complaint lacks a sufficient allegation that defendants knew the statement was false or defendants recklessly disregarded its falsity. Assuming, as we must at this stage, that the statements that Salzano stole money are false and defamatory, a critical question in this suit is whether Salzano is a private *1034 figure, who can prevail by showing negligence, or a public figure or limited purpose public figure, who can prevail only upon demonstrating actual malice. See Gertz v. Robert Welch, Inc., 418 U.S. 323, 351, 94 S.Ct. 2997, 3012-13, 41 L.Ed.2d 789, 812 (1974); New York Times Co. v. Sullivan, 376 U.S. 254, 279-80, 84 S.Ct. 710, 726, 11 L.Ed.2d 686, 706 (1964); Costello, supra, 136 N.J. at 612, 643 A.2d 1012. Whether Salzano is a public figure, or whether his relation to the subject matter of the publication requires application of the actual malice standard, are matters of law for the court's determination. Costello, supra, 136 N.J. at 612, 643 A.2d 1012; Lawrence, supra, 89 N.J. at 462, 446 A.2d 469.
Because our courts have applied the actual malice standard where the topic of the report is one of public concern, Dairy Stores, Inc. v. Sentinel Publ'g Co., 104 N.J. 125, 143-44, 516 A.2d 220 (1986), or where the report relates to a private person involved in a regulated industry and whose involvement one would "reasonably expect implicates a legitimate public interest with an attendant risk of publicity," Sisler v. Gannett, 104 N.J. 256, 279, 516 A.2d 1083 (1986), determining whether the actual malice standard should be applied in a given situation can often prove troublesome. See Gertz, supra, 418 U.S. at 346, 94 S.Ct. at 3010, 41 L.Ed.2d at 809 (recognizing the "difficulty of ... decid[ing] on an ad hoc basis which publications address issues of `general or public interest'"); Dairy Stores, Inc., supra, 104 N.J. at 144, 516 A.2d 220 (recognizing that "not everything that is newsworthy is a matter of legitimate public concern, and that sorting such matters from those of a more private nature may be difficult"). Here, it cannot be legitimately argued that Salzano was a public figure at the time of publication; he clearly was not. But there is also little doubt that Salzano's father, who was the chief managing officer of NorVergence, is a public figure because NorVergence was involved in a highly-regulated industry and the claims regarding its eventual decline into bankruptcy made its business affairs a matter of public interest and concern. As a result, it is fair to conclude that the statements in question were made of a private person who, by fact of the suit brought against him by the trustee, had become enmeshed in a matter of public concern. This is sufficient to bind Salzano to the actual malice standard.
In this regard we chiefly rely on the Court's decision in Sisler, which bears similarities. There, plaintiff Sisler was a retired bank president. The Courier-News reported that Sisler had received an under-collateralized loan from his former bank in order to finance his horse farm, and that federal and state authorities were investigating this "questionable" loan, suggesting Sisler improperly benefited from insider dealing. 104 N.J. at 259-60, 516 A.2d 1083. The article, in fact, was inaccurate. Id. at 260, 516 A.2d 1083.
The Court held that Sisler, as a former bank official, was neither a public official nor a public figure. Id. at 269-70, 516 A.2d 1083. He was, however, held to the actual malice standard. The Court explained that "the propriety of substantial loans issued by an area bank to its former-president and founder is a topic of legitimate public interest," and that "[t]he press thus has an important function not only in reporting government activity respecting banking but also in informing the public about bank conduct." Id. at 268-69, 516 A.2d 1083. For the same reason, we hold that although Salzano is a private figure, whether he unlawfully received NorVergence funds is a matter of legitimate public interest. The articles indicate that "NorVergence's abrupt bankruptcy in July 2004, threw 1,300 people out of work and *1035 left thousands of small-business customers without phone and Internet service"; that "a federal court entered a $181.7 million default judgment against NorVergence in a case brought by the Federal Trade Commission"; and that NorVergence "owes $550 million." These circumstances have not been disputed. In light of the general public concern about NorVergence, and its activities, a claim brought by its bankruptcy trustee to recover nearly $500,000 of NorVergence funds allegedly diverted to Salzano is also a matter of public concern. That the claimed recipient of those allegedly diverted funds was a private figure does not trump the public concern regarding the ongoing saga of NorVergence.[4]
Concluding that the actual malice standard applies in this case, however, does not end the matter. We must also consider whether Salzano's complaint sufficiently pled facts that would, if proven, support a finding that defendants acted with actual malice. Here, it is true that Salzano's complaint only alleges actual malice in a general, conclusory way. We do not view this, however, as immediately fatal. Now that we have resolved the legal question concerning the appropriate level of fault, it is appropriate to provide the pro se plaintiff with the opportunity to file an amended complaint before ultimately determining whether this defamation suit may be further maintained. See Printing Mart-Morristown, supra, 116 N.J. at 772, 563 A.2d 31.
We lastly observe with regard to any future application to dismiss that the judge should be mindful that evidence of actual malice, which may often require examination of the defendant's state of mind, is not always available to a plaintiff. Accordingly, upon the filing of an amended complaint and the anticipated renewal of a motion for dismissal or a motion for summary judgment, not only should the judge consider whether the pleading sufficiently alleges actual malice and the assertion of all relevant details that Salzano may have access to in that regard, but also the fact that information regarding defendants' state of mind is not always accessible to a defamation plaintiff absent discovery. See Standridge v. Ramey, 323 N.J.Super. 538, 547, 733 A.2d 1197 (App.Div.1999); see also Hutchinson v. Proxmire, 443 U.S. 111, 120 n. 9, 99 S.Ct. 2675, 2680 n. 9, 61 L.Ed.2d 411, 422 n. 9 (1979) (recognizing that "proof of `actual malice' calls a defendant's state of mind into question ..., and does not readily lend itself to summary disposition"); Costello, supra, 136 N.J. at 615, 643 A.2d 1012 (observing that "[b]ecause the issue of a defendant's state of mind `does not readily lend itself to summary disposition,' courts are wary of disposing of cases involving actual malice through summary judgment").

III
Our discussion to this point has focused on the allegedly defamatory statements that Salzano "stole money" from NorVergence. Not to be overlooked is the fact that Salzano has also claimed the articles defamed him by asserting that he and his father "started a Kenilworth business last year called Charity Snack, which also went belly-up." Because that statement is not contained within the bankruptcy complaint, the fair report privilege has no application to this particular aspect of Salzano's suit.
*1036 We can find no analysis in or between the few short lines of the judge's oral decision regarding this aspect of the complaint. Ordinarily, we would not necessarily consider the point, leaving it to the trial court's consideration following our remand, but we are satisfied there is an arguably defamatory meaning in the statement regarding the Kenilworth business to preclude its dismissal at the pleading stage.
In considering the sufficiency of this claim, we are required to apply the well-established standard for determining whether defamation allegations state a claim upon which relief may be granted. That is, if a statement is susceptible only to a non-defamatory meaning, the claim must be dismissed, Decker v. Princeton Packet, 116 N.J. 418, 424, 561 A.2d 1122 (1989), but if the statement is "capable of more than one meaning, one of which is defamatory and another not, the question of whether its content is defamatory must be resolved by the fact finder," Russo v. Nagel, 358 N.J.Super. 254, 263, 817 A.2d 426 (App.Div.2003) (citing Romaine, supra, 109 N.J. at 290-91, 537 A.2d 284). The present record suggests that a defamatory meaning may be attributed to defendants' reference to the Kenilworth business in at least two ways.
First, the statement may be construed as suggesting that Salzano is a poor or incompetent businessman. A false assertion that a person is incompetent with regard to a chosen trade or profession is actionable without proof of damage. Biondi v. Nassimos, 300 N.J.Super. 148, 154, 692 A.2d 103 (App.Div.1997); Reilly v. Curtiss, 83 N.J.L. 77, 78, 84 A. 199 (Sup. Ct.1912); see also Prosser, supra, § 112 at 790-91; Restatement, supra, § 573. Here, the record reveals far too little information for a determination of whether the statement is false. Moreover, the record does not indicate whether the statement asserts that Salzano is incompetent at his particular calling because his chosen trade or profession is not revealed by the complaint. Considering that Salzano's assertion in this regard is at least colorable, the judge mistakenly dismissed this aspect of the complaint.
Second, the context in which this statement is found must also be considered. After asserting that Salzano had stolen funds from NorVergence, defendants then stated that Salzano was a participant in a business with his father, "the mastermind" of the NorVergence debacle, that "also" failed. It is arguable that, in this way, defendants attempted to impart a more sinister gloss on the failure of the Kenilworth business by linking it with Salzano's alleged dishonest conduct with regard to NorVergence. In other words, the statement regarding the Kenilworth business, in light of its context, could be interpreted by "reasonable persons of ordinary intelligence," Romaine, supra, 109 N.J. at 290, 537 A.2d 284, as suggesting that the Kenilworth business "also" failed because of Salzano's alleged dishonest conduct regarding NorVergence.
We lastly observe that because the matter has not been the subject of discussion in the trial court, it is not presently appropriate to ascertain whether the actual malice standard should apply to this aspect of the claim. Although we have held that Salzano is a private figure involved in a matter of public concern regarding the NorVergence situation, it does not necessarily follow that he is similarly cloaked with regard to the Kenilworth business. We deem it appropriate to leave the issue for further examination and consideration in the trial court, where this issue may be more fully developed.

IV
For these reasons, we reverse the order of dismissal. We remand for the trial *1037 court's entry of an order providing Salzano with the opportunity to file an amended complaint within a brief and reasonable period of time.
Because we recognize that the summary judgment procedure is "an important tool for disposing of non-meritorious libel lawsuits," Costello, supra, 136 N.J. at 605, 643 A.2d 1012; see also Standridge, supra, 323 N.J.Super. at 547-49, 733 A.2d 1197, our reversal of the order of dismissal should not be deemed to foreclose the filing of dispositive motions following Salzano's filing of the anticipated amended complaint or, if necessary, the further development of those issues we have not resolved.
Reversed and remanded. We do not retain jurisdiction.
NOTES
[1] North Jersey acknowledged that it publishes The Record, and that The Glen Ridge Voice and NorthJersey.com are its "wholly-owned subsidiaries." North Jersey also claimed that the individual defendants were not served with process, that Glen Ridge Voice Inc. and Frank A. Orechio, the former owners of The Glen Ridge Voice, also were not served with process, and that "it is believed Mr. Orechio is deceased." In light of our disposition of the appeal, we need not now determine how the parties are related or responsible for the articles in question or whether all have been served with process. Those issues, to the extent still necessary, may be considered in the trial court following today's judgment.
[2] The parties have raised numerous other issues on appeal that were not addressed in the trial judge's brief oral decision. For example, the parties have argued whether Salzano's claims of an invasion of privacy, and negligent and intentional infliction of emotional distress, may survive the dismissal of the defamation claim. And the individual defendants, other than Orechio, argue that the dismissal may be upheld because the court lacks personal jurisdiction over them due to the alleged lack of service of process. Because our resolution of the defamation issues requires a reversal of the order of dismissal, we need not address these other issues, which the parties may continue to pursue in the trial court.
[3] Defendants' references throughout their submissions in this court to Charles M. Forman as "U.S. Trustee" are not supported by the record. Although this is a fact that we assume is easily demonstrable following remand, our holding suggests that this fact might no longer have relevance.
[4] The conducting of businesses that do not meet the public concern standard have been recognized in Senna v. Florimont, 196 N.J. 469, 958 A.2d 427 (2008) and Turf Lawnmower Repair, Inc. v. Bergen Record Corp., 139 N.J. 392, 655 A.2d 417 (1995), cert. denied, 516 U.S. 1066, 116 S.Ct. 752, 133 L.Ed.2d 700 (1996).