**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3145-23

MICHAEL ROSE,

    Plaintiff-Appellant,

v.

BOROUGH OF OAKLAND
and VIVIAN KING,

    Defendants-Respondents.

_____

Submitted March 11, 2025 – Decided March 27, 2025

Before Judges Chase and Vanek.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-4112-23.

Gordon Rees Scully Mansukhani, LLP, attorneys for appellant (Scott V. Heck and Tara D. Sanderson, on the briefs).

Botta Angeli, LLC, attorneys for respondent Borough of Oakland (Natalia R. Angeli, on the brief).

Pfund McDonnell, PC, attorneys for respondent Vivian King (Mary C. McDonnell and David J. Guzik, on the brief).

PER CURIAM

Plaintiff Michael Rose appeals from an April 29, 2024 order denying reconsideration of a February 8, 2024 order granting dismissal of his complaint against defendants the Borough of Oakland (the "Borough") and Vivian King under Rule 4:6-2(e).  We affirm.

I.

Plaintiff and King were members of the Zoning Board of Adjustment and Planning Board (the "Board") for the Borough during 2021 and 2022.  Plaintiff alleged King acted rude and unprofessionally towards him.  He further alleged that in August and September 2021 he reported King's behaviors to the mayor.

In August, the Board held an in-person meeting where both parties were present.  After the meeting, plaintiff (who sat next to King) tested positive for COVID-19 and blamed her for attending even though she was sick.  The Board held another in person meeting in November 2021.  While the Board members trickled into the meeting space, plaintiff commented that King infected him with COVID-19.  According to King, she refuted this, and plaintiff "began spewing a litany of vulgarity calling her a 'b***h, a*****e, c**t' and telling her to 'f**k off.'"  A few other Board members witnessed the exchange.

After the Board meeting, King formally complained to the mayor and Borough Administrator. As a result, the Borough hired outside counsel to investigate. As part of the investigation, both parties (with their respective attorneys) were interviewed as well as the Board's secretary and chairman. During his interview, plaintiff recounted the contentious history between King and himself, but also admitted he used the profane language in the November 2021 incident. Plaintiff claimed the profanity was his attempt at "finally standing up for himself" after a series of harassing comments where King called him an "a*****e" various times and disrespected him in front of other Board members.

In February 2022, counsel produced a twenty-nine-page investigative report. The report concluded "[t]he evidence presented was sufficient to sustain a finding [plaintiff] acted inappropriately and that his conduct could be construed as unlawful harassment." The report noted plaintiff admitted he used the term "c**t," to refer to King. As to plaintiff's complaint against King, the report stated she admitted she called plaintiff an "a******e" but denied making other profane comments, nor did the other interviewees witness other profane language. Accordingly, the report concluded there was insufficient evidence to support a finding that King harassed plaintiff based on a protected class.

Subsequently, plaintiff remained on the Board, but King did not. The record does not specify when or why King's tenure on the Board ended.

A year and a half later, King posted the following on a Facebook group for Borough residents:

> It is my understanding that there is a comment on this thread written by a Michael Rose, who sits on the Zoning Board in Oakland. Mr. Rose has me blocked so I cannot see his post pertaining to me and my connection to a local business. I served on the same Board with Mr. Rose and I feel the entire community should know that Mr. Rose called me a CU$T (Cee-U-Next-Tuesday) during a Board meeting because he didn't like something I said. There was a full investigation done and Mr. Rose was found to have wronged me, yet he remained on the Board and I was removed. Is THIS the type of person we want making decision for our community? This type of behavior cannot continue.
>
> *This post is my opinion and does not reflect the views of any of the Board members on any of the Boards upon which I serve.

Plaintiff then filed a complaint, alleging negligence against the Borough and defamation per se against King. Both parties filed pre-answer motions to dismiss, with the Borough attaching the investigative report to its moving papers.

4

On February 8, 2024, the trial court granted both motions, dismissing plaintiff's complaint with prejudice.  Plaintiff filed a motion for reconsideration which the court denied on April 29, 2024.

This appeal followed.

II.

A Rule 4:6-2(e) motion to dismiss for failure to state a claim upon which relief can be granted is reviewed de novo.  Baskin v. P.C. Richard & Son, LLC, 246 N.J. 157, 171 (2021) (citing Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C., 237 N.J. 91, 108 (2019)).  "A reviewing court must examine 'the legal sufficiency of the facts alleged on the face of the complaint,' giving the plaintiff the benefit of 'every reasonable inference of fact.'"  Ibid.  The test for determining the adequacy of a pleading is "whether a cause of action is 'suggested' by the facts."  Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989) (quoting Velantzas v. Colgate-Palmolive Co., 109 N.J. 189, 192 (1988)).  At this preliminary stage of the litigation, the court is not concerned with a plaintiff's ability to prove its case.  Leon v. Rite Aid Corp., 340 N.J. Super. 462, 466 (App. Div. 2001).

The court must grant plaintiff "every reasonable inference of fact."  Ibid. (quoting Printing Mart-Morristown, 116 N.J. at 746).  "If the court considers

evidence beyond the pleadings in a <u>Rule</u> 4:6-2(e) motion, that motion becomes a motion for summary judgment." <u>Dimitrakopoulos</u>, 237 N.J. at 107. Nevertheless, a motion to dismiss is not converted into a summary judgment motion where a document referenced in the complaint is filed with the motion. <u>Myska v. N.J. Mfrs. Ins. Co.</u>, 440 N.J. Super. 458, 482 (App. Div. 2015).

Additionally, "a complaint should not be dismissed" if "a cause of action is suggested by the facts." Pressler & Verniero, <u>Current N.J. Court Rules</u>, cmt. 4.1.1 on <u>R.</u> 4:6-2 (2025). "[H]owever, if the complaint states no basis for relief and discovery would not provide one, dismissal of the complaint is appropriate." <u>Ibid.</u> To that end, the complaint must have more than conclusory allegations unsupported by facts. <u>See</u> <u>Neuwirth v. State</u>, 476 N.J. Super. 377, 390 (App. Div. 2023).

## III.

### A.

Plaintiff first argues his negligence claim against the Borough should not have been dismissed. His complaint alleges the Borough's "investigation . . . is not permitted per the Borough of Oakland's Handbook and By-Laws." Therefore, he contends that the decision to investigate King's complaint was an "unreasonable exercise of judgment." In the alternative, he posits that if the

Borough had authority to investigate King's complaint, it is "unclear" why plaintiff's complaints were not investigated.

As an initial matter, plaintiff's complaint contains unsupported conclusory allegations against the Borough. Plaintiff's claim was that the Borough failed to investigate his complaints against King. Yet he cites no facts to show a duty, breach, causation, or damages. See Fernandes v. DAR Dev. Corp., Inc., 222 N.J. 390, 403-04 (2015) (setting forth the elements of a negligence claim). Plaintiff does not cite to any specific Borough ordinance, rule, or bylaw which the Borough allegedly violated. Other than the bare allegation of negligence, there are no facts supporting plaintiff's claim. On that basis, dismissal was warranted pursuant to Rule 4:6-2(e).

Plaintiff also challenges the trial courts determination that the Borough is entitled to immunity under New Jersey's Tort Claims Act ("TCA"), N.J.S.A. 59:1-1 to 12-3. Specifically, he contends the court misapplied N.J.S.A. 59:2-3 to the facts of this case. N.J.S.A. 59:2-3 states:

> a. A public entity is not liable for an injury resulting from the exercise of judgment or discretion vested in the entity;
>
> . . . .
>
> d. A public entity is not liable for the exercise of discretion when, in the face of competing demands, it

determines whether and how to utilize or apply existing resources, including those allocated for equipment, facilities and personnel unless a court concludes that the determination of the public entity was palpably unreasonable. Nothing in this section shall exonerate a public entity for negligence arising out of acts or omissions of its employees in carrying out their ministerial functions.

Discretion under section (a) turns on whether the decision involved was a "high-level policymaking decision[] involving the balancing of competing considerations." Costa v. Josey, 83 N.J. 49, 55 (1980). In other words, "[a] discretionary act . . . calls for the exercise of personal deliberations and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed." S.P. v. Newark Police Dep't, 428 N.J. Super. 210, 230 (App. Div. 2012) (quoting Kolitch v. Lindedahl, 100 N.J. 485, 495 (1985)). On the other hand, "a ministerial act is 'one which a person performs in a given state of facts in a prescribed manner in obedience to the mandate of legal authority, without regard to or the exercise of his own judgment upon the propriety of the act being done.'" Parsons, 440 N.J. Super. at 91-92 (quoting S.P., 428 N.J. Super. at 231). For instance, a police officer responding to the scene of an accident has been found to be a ministerial duty because rendering such assistance falls within the duties of their employment. Est. of Gonzalez v. City of Jersey City, 247 N.J. 551, 572

8

(2021) (citations omitted). The resolution of whether an action is ministerial or discretionary is a fact-sensitive analysis. Id. at 575.

As noted in subsection (d), where the negligence arises out of acts or omissions related to ministerial functions, no immunity will be afforded to the public entity. N.J.S.A. 59:2-3(d); see also Parsons v. Mullica Twp. Bd. of Educ., 440 N.J. Super. 79, 93 (App. Div. 2015).

Even if the complaint was supported by adequate facts, the trial court correctly determined that the Borough is entitled to immunity under the TCA. "The TCA 'effectuates the Legislature's intent to establish immunity for government action as the rule and liability as the exception.'" Lee v. Brown, 232 N.J. 114, 127 (2018). Under N.J.S.A. 59:1-2, public entities are only liable for negligence as outlined in the act. See Maison v. N.J. Transit Corp., 245 N.J. 270, 289 (2021).

The Borough's decision to investigate King's complaint was a discretionary one because it was a policy consideration that required the exercise of judgment. There was no "prescribed manner" in which the Borough needed to act when it received King's complaint. On the contrary, there was considerable "personal deliberation[] and judgment" that needed to be exercised in order for the Borough administrator to decide to have counsel conduct an

investigation. See S.P., 428 N.J. Super. at 231; see also Black v. Borough of Atl. Highlands, 263 N.J. Super. 445, 452 (App. Div. 1993) (finding that "retention of a private contractor and reliance upon his services would clearly be a policy decision."). In fact, plaintiff's complaint calls the Borough's decision to investigate him an "exercise of judgment," albeit an unreasonable one. The Borough's decision was also a policy decision as to how it would resolve these competing complaints. Therefore, the Borough's decision to investigate King's complaints was discretionary and subject to immunity under N.J.S.A. 59:2-3(a).

Although plaintiff argues he should be entitled to discovery into the issue of whether the decision was ministerial or discretionary, there is simply no indication that further discovery would change the facts. It is well-established that discovery is not an opportunity for a fishing expedition. See Ellis v. Hilton United Methodist Church, 455 N.J. Super. 33, 41 (App. Div. 2018). A party must identify the specific discovery sought and plaintiff has not done so here. See ibid. Rather, plaintiff wants to conduct discovery to determine whether he might have a claim against the Borough, which is inappropriate.

## B.

Plaintiff also challenges the dismissal of his defamation claim against King. The elements of a defamation claim are "(1) the assertion of a false and

defamatory statement concerning another; (2) the unprivileged publication of that statement to a third party; and (3) fault amounting at least to negligence by the publisher." DeAngelis v. Hill, 180 N.J. 1, 12-13 (2004). If "the plaintiff is a public official, plaintiff must [also] establish that the defendant knowingly or with reckless disregard for the truth published false statements." Id. at 13; see also Neuwirth 476 N.J. Super. at 392 (actual malice requires a consideration of whether "the defendant in fact entertained serious doubts as to the truth of his [or her] publication"). Actual malice must be pled by clear and convincing evidence. DeAngelis, 180 N.J. at 13; See also Neuwirth 476 N.J. Super. at 391.

A heightened standard is warranted for public officials because "[p]ublic officials and public figures usually enjoy significantly greater access to the channels of effective communication and hence have a more realistic opportunity to counteract false statements" than private individuals usually enjoy. Senna v. Florimont, 196 N.J. 469, 484 (2008) (alteration in original) (quoting Gertz v. Robert Welch, Inc., 418 U.S. 323, 344 (1974)). The issue of whether an individual is classified as a public figure is a question of law. See Costello v. Ocean Cnty. Observer, 136 N.J. 594, 612 (1994).

The designation "applies at the very least to those among the hierarchy of government employees who have, or appear to the public to have, substantial

responsibility for or control over the conduct of governmental affairs." Id. at 613 (quoting Rosenblatt v. Baer, 383 U.S. 75, 85 (1966)). "Our courts have taken an expansive view of the types of government employees who qualify as 'public officials.'" Stanridge v. Ramey, 323 N.J. Super. 538, 545 (App. Div. 1999) (former high school athletic director is a public official); see also Costello, 136 N.J. at 614 (police lieutenant is a public official); Verna v. Links at Valleybrook Neighborhood Ass'n, 371 N.J. Super. 77, 97 (App. Div. 2004) (candidates for public office such as school board, mayor, public agencies, etc. are public officials); Eadie v. Pole, 91 N.J. Super. 504, 508 (App. Div. 1966) (tax assessor is a public official).

As for the content itself, "[g]enerally, words that subject a person to ridicule or contempt, or 'that clearly "sound to the disreputation" of an individual are defamatory on their face.'" DeAngelis, 180 N.J. at 13-14. While the use of profanity and name-calling may be hurtful to the target, they are not necessarily actionable. Id. at 14. Instead, the alleged defamatory statement must be viewed in context of the entire publication, with "fair and natural meaning" given to the words used. Ibid. Further, courts should focus on the "substantial truth" of the statement as "[m]inor inaccuracies do not amount to falsity so long as 'the substance, the gist, the sting, of the libelous charge be justified.'" G.D. v. Kenny,

205 N.J. 275, 294 (2011) (quoting Masson v. New Yorker Mag., Inc., 501 U.S. 496, 517 (1991)).

A plaintiff in a defamation case cannot rely merely on conclusory pleadings. See Neuwirth, 476 N.J. Super. at 390. This is because in defamation cases, the "courts must balance 'an individual's right to protect his reputation . . . and our citizens' right to free expression and robust debate in our democracy society.'" Ibid. (quoting Petro-Lubricant Testing Lab'ys Inc. v. Adelman, 233 N.J. 236, 243 (2018)). Thus, "[a] plaintiff can 'bolster a defamation cause of action through discovery, but not [] file a conclusory complaint to find out if one exists.'" Ibid. (second alteration in original) (quoting Printing Mart-Morristown, 116 N.J. at 768).

Plaintiff challenges the trial court's determination that the actual malice standard applies here because he posits the Facebook post concerned a private conversation between the parties, and he was not a public figure in the context of that private conversation. Plaintiff's arguments here miss the point. The trial court was not examining the conversation that occurred in November 2021 between King and him.[1] Rather, the focus, based upon plaintiff's complaint, was

_____

[1] The trial court aptly noted (and plaintiff does not challenge) that a defamation claim for the November 2021 comments would be time-barred under the applicable statute of limitations.

13

whether the Facebook post made in July 2023 was defamatory.

Here, the complaint states plaintiff was (and remained) a member of the Board. Since these positions require significant involvement in the governmental affairs of the Borough, plaintiff is subject to the designation of public official. See Costello, 136 N.J. at 613. Although plaintiff argues when he made the November 2021 comment he was not acting in his capacity as a public official, again, the court's focus remains on King's July 2023 Facebook post. The post was made in a group for Borough residents, and asked "Is THIS the type of person we want making decisions for our community?" The post also states plaintiff remains on the board. Taken in context, the post is clearly aimed at exposing conduct by a public official that the community may find noteworthy and of public concern. Therefore, regardless of whether the November 2021 comment concerned a private conversation, King's 2023 Facebook post concerned plaintiff's status as a public official.

Having concluded plaintiff was a public official, he was required to adequately plead actual malice. See DeAngelis, 180 N.J. at 13. "The actual-malice standard is a subjective standard that does not involve consideration of whether a reasonable person would have, or should have, known the statement was false but rather whether 'the defendant in fact entertained serious doubts as

to the truth of his publication.'" Neuwirth, 474 N.J. Super. at 392 (quoting St. Amant v. Thompson, 390 U.S. 727, 731 (1968)). The plaintiff must provide facts to show the defendant had "knowledge that the facts were false or [had] reckless disregard for their truth or falsity." Darakjian v. Hanna, 366 N.J. Super. 238, 247 (App. Div. 2004) (quoting Dairy Stores, Inc. v. Sentinel Pub. Co., 104 N.J. 125, 149 (1986)). A defamation claim cannot proceed on the mere allegation that the offending statement was made with knowledge of its falsity or with reckless disregard. See id. at 247-48.

Plaintiff's complaint does not satisfy the pleading standard for actual malice. As with his negligence claim against the Borough, plaintiff's claim against King is supported by conclusory allegations. Plaintiff points to King's history of making "unprovoked nasty epithets and insulting remarks" towards him. However, this history, even when taken as true, would evidence that King had ill-will towards plaintiff, but they do not provide factual support for the falsity of her Facebook post at issue.

Plaintiff also argues the trial court accepted the Borough's report as undisputed and, even if the report is undisputed, it supports his claim that King knew her statements were false. The trial court did not look to the report for its accuracy, rather the court referred to the report in its analysis to conclude that

the findings in the report mostly track King's Facebook post. Therefore, contrary to plaintiff's assertion, the report did not provide support for plaintiff's claim that King had knowledge relating to the falsity of her statement.

Plaintiff also points to the inconsistencies between the investigative report and King's Facebook post; that his profane comment was made before a Board meeting and not during it, King was not removed from the Board due to any action by plaintiff as the report does not recommend King resign or be removed, and that a full investigation was not done as the report does not fully investigate his claims. It should be noted the record does not establish, and the complaint does not allege, King had read the report when she made her Facebook post.

Regardless of King's awareness of the report, it does support the conclusion that King believed her statements were true. Although the Facebook post states plaintiff's profane comments were made "during" a Board meeting, this is a minor inaccuracy that has no bearing on the substantial truth of the overall allegation (i.e., that plaintiff used the profane language against King). See G.D., 205 N.J. at 294. As for whether plaintiff caused King's removal from the Board, the Facebook post merely states that plaintiff "remained on the Board and I was removed." The post does not state that plaintiff was the cause of King's removal. Last, while the post does claim there was a "full investigation,"

the fact remains that there was an investigation done by the Borough. Whether or not the investigation was "full" or even fair is a subjective assessment with which reasonable minds may disagree. When read in its full context, the Facebook post mostly tracks the findings and conclusion of the investigative report. As such, the court correctly determined a defamation claim could not stand.

To the extent we have not specifically addressed any remaining arguments, it is because we find them to be without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(e).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley
Clerk of the Appellate Division

17                                                                    A-3145-23